

FILED
JAN 3 1 2011

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| **SHIRLEY M. BERRY,** | CIV. *11-4018* |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| **TIME INSURANCE COMPANY and JOHN HANCOCK LIFE INSURANCE COMPANY (USA),** | |
| Defendants. | |

Plaintiff, Shirley M. Berry, for her Complaint against the above-named Defendants, Time Insurance Company ("Time") and John Hancock Life Insurance Company (USA) ("John Hancock"), states and alleges as follows:

### Parties, Jurisdiction and Venue

1. Shirley M. Berry is a retired widow who resides in Mitchell, South Dakota.

2. On or about November 1, 1996, Mrs. Berry purchased a Nursing Home Insurance Policy through Time Insurance Company.

3. Time is a licensed insurance company and at all times material conducted business in the State of South Dakota.

4. Upon information and belief, Plaintiff alleges that John Hancock is now, and at all times material mentioned in this complaint, was an out of state corporation authorized to transact and transacting the business of insurance in South Dakota and was the administrator for the policy underwritten by Time.

5. Jurisdiction in this lawsuit in federal district court is proper pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

6. Venue in the United States District Court for South Dakota, Southern Division is proper pursuant to 28 U.S.C. §1391(a), as jurisdiction is founded only on diversity jurisdiction, the parties do not all reside in the same state, and the Southern District of South Dakota is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

### Factual Background

7. Mrs. Berry realleges and incorporates by reference all appropriate preceding paragraphs.

8. On or about November 1, 1996, Time provided nursing home insurance to

Complaint
Shirley M. Berry v. Time Insurance Company and John Hancock Life Insurance Company (USA)

Mrs. Berry, Policy Number 0004464164, a copy of which is attached as Exhibit A.

9. From November 1, 1996, through the present, Time provided nursing home insurance to Mrs. Berry and Mrs. Berry paid insurance premiums to Time.

10. Upon information and belief, at all times material, John Hancock administered the nursing home insurance policy on behalf of Time.

11. Mrs. Berry has paid substantial premiums for the policy provided and underwritten by Time and administered through John Hancock.

12. In September of 2008, during the period covered by Mrs. Berry's nursing home policy, Mrs. Berry fell in her home and has since required home health care assistance to remain in her Mitchell, South Dakota home.

13. Mrs. Berry's nursing home policy provides for alternate care in lieu of residing at a nursing facility.

14. Following her fall, Mrs. Berry's daughter, Lisa Paulson, contacted John Hancock and was told that alternate care could only be provided by a "licensed home healthcare provider." She was also told there were no exceptions to this requirement.

15. Mrs. Berry also reported her claim for alternate care benefits to her insurance agent, Ronald Jenkins of Mitchell, South Dakota shortly after her fall in 2008.

16. Mrs. Berry later discovered the State of South Dakota does not license home health care providers. Because of Ms. Paulson's conversation with the John Hancock representative, Mrs. Berry and her daughter believed John Hancock would not provide alternate care coverage since there we no licensed home health care providers available in Mitchell, SD. Based on this belief, Mrs. Berry hired her own providers, incurred significant expenses to retro-fit portions of her house to suit her needs, and purchased durable medical equipment to assist her in remaining in her home.

17. Eighteen months later, Mrs. Berry's condition had not improved. Her son, Dr. Spencer Berry, a board certified family practice physician, then contacted John Hancock to again inquire regarding benefits available under the policy.

18. On March 5, 2010, after Dr. Berry's call, John Hancock for the first time provided Mrs. Berry a list of steps that were allegedly required prior to her receiving her alternate care benefits.

19. According to John Hancock's Long Term Care Benefits Center, receiving a visit from a care coordinator who is not an employee of John Hancock was the first step in an eligibility determination. No such information was provided when Ms. Paulson initially contacted John Hancock.

20. Audrey Eich of LifePlans, Inc. visited with Mrs. Berry on March 12, 2010.

2

Complaint
Shirley M. Berry  v. Time Insurance Company and John Hancock Life Insurance Company (USA)

Following that visit, Myong Hunt, RN, with LifePlans, Inc. provided Mrs. Berry with a Recommended Plan of Care and a list of resources, stating it was for purposes of information to guide her care needs and to find local support. This "Plan of Care" listed six pieces of equipment that Mrs. Berry needed to live at home, a Home Care Provider Information sheet, and Home Care Provider Checklist. Ms. Hunt also documented Mrs. Berry's medical conditions which included osteo arthritis and anxiety. No further information was provided by John Hancock at that time.

21.     CHCS Services, Inc. then contacted Mrs. Berry on behalf of John Hancock. CHCS, John Hancock's agent, provided Mrs. Berry with "BestMatch" program results for her home health care needs.  The provider recommended by CHCS was Home Instead Senior Care of Mitchell, SD.  This service was not a "licensed home health care provider" and was not certified by the state of South Dakota or Medicare.

22.     On March 22, 2010 John Hancock's Long-Term Care Benefits Center sent Mrs. Berry a letter stating she met the benefit eligibility criteria under the policy.

23.     On April 1, 2010, Dr. Berry wrote John Hancock and again requested benefits under the policy for Mrs. Berry. Dr. Berry noted that his mother was doing well with her current home health care providers and that her current "Plan"  was "necessary, appropriate, and adequate." He noted that she trusted her current home health care providers and that they provided her with quality care. Dr. Berry also provided John Hancock with an extensive information regarding the current providers, including their contact information, their qualifications, the services each rendered to Mrs. Berry and schedules of each provider.

24.     In a letter of April 13, 2010, John Hancock denied the request stating the "independent care providers" requested by Mrs. Berry did not "meet the requirement John Hancock has determined for minimum licensing criteria for a provider under Alternate Care Benefits."  This denial was made even though John Hancock knew no such requirements were contained in the policy provisions.  Mrs. Berry was then forced to hire legal counsel to assist her in obtaining her benefits.

25. After intervention by counsel, John Hancock agreed in a letter dated June 29, 2010 to provide coverage for some equipment purchased after March 1, 2009. John Hancock refused to pay for equipment purchased before March 1, 2009 because it believed the claim for benefits was not filed until March of 2010 and that the policy only allowed for claims incurred within 12 months prior to the claim report.  John Hancock took this position in spite of the fact that contact had been made with the agent and John Hancock shortly after her need for care first arose approximately 18 months earlier. John

Complaint
Shirley M. Berry v. Time Insurance Company and John Hancock Life Insurance Company (USA)

Hancock also approved expenses from Avera Queen of Peace Home Health Care for dates of service March 8, 2009 through March 24, 2009, but reiterated its prior refusal to pay any of Mrs. Berry's additional alternate care benefits.

26. Mrs. Berry's policy, when discussing alternate care plans, states that care plans are supposed to be negotiated between the parties, yet John Hancock has refused to negotiate the plan as required.

27. Mrs. Berry's policy does not state a home health care provider must be licensed or certified by Medicare. John Hancock knew that the policy contained no such requirement, yet John Hancock has unreasonably and unjustifiably required licensure or certification as a prerequisite to providing benefits to Mrs. Berry.

## Count 1
## Breach of Contract

28. Mrs. Berry realleges and incorporates by reference all appropriate preceding paragraphs.

29. Since 1996 to the present, Mrs. Berry has had a contract of insurance with Time providing Mrs. Berry with nursing home insurance that covers alternate care provided in her home.

30. Page 7 of the policy defines provider as follows:

> **Provider:** A person or entity who is properly trained and operating in accordance with any applicable state laws or licensing regulations to provide specified care for a fee for service or other charge.

31. Page 10 of the policy defines alternate care as follows:

> **Alternate Care:** A special arrangement of services specifically designed to allow You to reside in a setting other than a Nursing Facility. It may be any combination of: 1) services to provide You Assistance; 2) Capital Improvement; and 3) Durable Medical Equipment.

32. Alternate Care Plan is defined on page 10 of the policy as follows:

> **Alternate Care Plan:** An evaluation of Your care needs and a recommendation of the services required for You to reside outside of a Nursing Facility. A Plan may be developed by Your Doctor or Us.

33. The Plan's Eligibility for the Payment of Alternate Care Benefits on

4

Complaint
Shirley M. Berry v. Time Insurance Company and John Hancock Life Insurance Company (USA)

pages 10-11 of the policy states as follows:

> **Eligibility for the Payment of Alternate Care Benefits**: Limitations or Conditions on Eligibility: You are eligible for Alternate Care Benefits if: 1. We receive proof that You are eligible for Nursing Facility Benefits; 2. You would otherwise require Nursing Facility Care; and 3. a Plan is mutually agreed to by You, Your Doctor and Us.
>
> A Plan is valid and can only be implemented when You, Your Doctor and Time Insurance reach a mutual agreement to the terms of the Plan. This Plan is negotiable and upon final agreement must specify the: 1. frequency, duration and Provider of each service required; 2. minimum quality and licensing criteria of each Provider; 3. location of each service required; and 4. required Capital Improvements or Durable Medical Equipment.
>
> Upon final agreement, We will send You a letter with the terms of the Plan including an explanation of how the Plan will affect Your Elimination Period and Benefit Period.

34. Since at least September of 2008, Mrs. Berry has required alternate care in her home.

35. This alternate care has included, but has not been limited to, full-time and overnight home health care providers, home health equipment, and modifications to Mrs. Berry's home to accommodate her needs.

36. John Hancock has denied alternate care coverage for the home health care providers, equipment, and home modifications in spite of her repeated requests and in spite of policy provisions to the contrary.

37. John Hancock breached its contract of insurance by refusing to provide insurance coverage for Mrs. Berry's alternate care needs, coverage for which Mrs. Berry paid substantial premiums.

## Count 2
## Bad Faith

38. Mrs. Berry realleges and incorporates by reference all applicable preceding

Complaint
Shirley M. Berry v. Time Insurance Company and John Hancock Life Insurance Company (USA)
paragraphs.

39. Mrs. Berry provided timely notice to John Hancock of her disability giving rise to coverage and also timely requested payment of the applicable benefits.

40. John Hancock's denial of Mrs. Berry's claim for alternate care coverage and delay in deciding whether to provide coverage lacks a reasonable basis.

41. John Hancock knew it lacked a reasonable basis for denial of or delay in responding to the claim or it acted in reckless disregard as to whether or not a reasonable basis existed for the denial of the claim.

42. John Hancock denied or delayed action on Mrs. Berry's claim for coverage in violation of the specific terms of the policy and in violation of the implied covenant of good faith and fair dealing and thereby has acted and continues to act in bad faith.

43. John Hancock's refusal to provide coverage and to honor the plain terms of the insurance contract was willful, vexatious and without reasonable basis, resulting in substantial damages to Mrs. Berry.

## Count 3
## Punitive Damages

44. Mrs. Berry realleges and incorporates by reference all applicable preceding paragraphs.

45. The conduct of John Hancock has been and remains willful, unreasonable or done in conscious or reckless disregard for the rights of Mrs. Berry. The conduct has also been and remains vexatious and without reasonable cause. As a result, punitive damages are recoverable under SDCL 21-3-2.

## Count 4
## Attorney's Fees Pursuant to SDCL 58-12-3

46. Plaintiff realleges and incorporates by reference all applicable preceding paragraphs.

47. John Hancock has refused to pay Mrs. Berry alternate care insurance benefits as required by the contract of insurance between them, and such refusal is vexatious or without reasonable cause.

48. Pursuant to SDCL 58-12-3, Mrs. Berry is entitled to an award of reasonable attorney fees.

## Prayer for Relief

WHEREFORE, Mrs. Berry respectfully prays for the following relief:

(1) For her compensatory, general, special, contractual, and consequential

Complaint
Shirley M. Berry v. Time Insurance Company and John Hancock Life Insurance Company (USA)

    damages in an amount to be determined by the Court;

(2)  For prior benefits as required by the policy;
(3)  For future benefits as required by the policy;
(3)  For punitive damages in an amount to be determined by the Court;
(4)  For attorney's fees pursuant to SDCL 58-12-3;
(5)  For prejudgment and post-judgment interest;
(6)  For costs incurred; and
(7)  For any other relief the Court deems just and proper.

Dated this 28th day of January, 2011.

*[signature]*

Johnson, Miner, Marlow, Woodward & Huff, Prof. LLC
Michael F. Marlow
Beth A. Roesler
200 W. 3rd St.
PO Box 667
Yankton, SD 57078
Telephone: (605)665-5009
Facsimile: (605)665-4788
Email: mikem@jmmwh.com; beth@jmmwh.com

Attorneys for Plaintiff