UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SHIRLEY M. BERRY, | ) | CIV. 11-4018-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | DEFENDANTS' |
| TIME INSURANCE COMPANY and | ) | MOTION TO DISMISS |
| JOHN HANCOCK LIFE INSURANCE | ) | |
| COMPANY (USA), | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Shirley M. Berry, asserts breach of contract and bad faith claims against defendants, Time Insurance Company (Time) and John Hancock Life Insurance Company (Hancock), and seeks punitive damages and attorney's fees. Time and Hancock jointly move to dismiss Berry's claims. Berry resists the motion. The motion is denied.

**BACKGROUND**

In the light most favorable to Berry, the nonmoving party, the pertinent facts to this order are as follows:

Berry purchased a Nursing Home Insurance Policy (the policy) from Time on or about November 1, 1996. Hancock administers the policy. Berry continues to pay premiums and Time continues to provide insurance under this policy. The policy provides for alternate care in lieu of care in a residential nursing home if both parties agree to an alternative care plan.

Since Berry fell in September of 2008, she has required home healthcare assistance to remain in her home. Berry's daughter, Lisa Paulson, contacted Hancock shortly after the fall. Hancock informed her that, with no exceptions, alternate care could only be covered by the policy if it were provided by a licensed home healthcare provider. After this discussion, Berry discovered South Dakota does not license home healthcare providers. Therefore, Berry believed Hancock would not provide alternate care coverage and obtained independently funded home healthcare, services, and equipment so she could remain in her home.

Eighteen months later, Berry's son, Dr. Spencer Berry, M.D., contacted Hancock and, for the first time, Berry was informed of a list of steps that were required before she could receive alternative care benefits. After Berry was evaluated by a registered nurse, she received an insurance-sanctioned plan and a recommended home healthcare provider, who is neither licensed nor certified by the State of South Dakota. Dr. Berry called Hancock to request coverage of Berry's treatment plan, which had been in effect prior to the evaluation, and he provided Hancock with information on Berry's healthcare providers. Hancock refused to cover this care because the home healthcare provider did not meet minimum licensing criteria. The policy does not state that a home health provider must be licensed or certified.

2

Subsequently, Hancock offered to pay for some equipment and approved some home healthcare expenses.[1] Berry rejected this offer because she desires full coverage of the expenses associated with her chosen home healthcare provider. The policy states that alternative care plans are to be negotiated between the parties, but the parties were unable to reach a final agreement. Berry then brought this suit.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) ("[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' . . . a claim must be dismissed," (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984))); *see also Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (same). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "factual content that allows the court to draw the reasonable inference that

_____

[1]Hancock offered to cover expenses from Avera Queen of Peace Home Health Care provided to Berry from March 8, 2009, through March 24, 2009, because Hancock approved the use of this service. Hancock did not offer coverage for other providers.

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Under Rule 12(b)(6), the facts alleged in the complaint must be considered true and all inferences must be viewed in favor of the nonmoving party. *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (citing *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002)). *Twombly* and *Iqbal* have not changed the "fundamental tenet of Rule 12(b)(6) practice" that "inferences are to be drawn in favor of the non-moving party." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citations omitted).

The court must liberally construe the complaint in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). A court must also accept the facts alleged as true, even if they are doubtful. *Twombly*, 550 U.S. at 555. Thus, a well-pleaded complaint may proceed even if it appears that recovery is remote or unlikely. *Id.*; *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001) (same).

In ruling on a motion to dismiss, "[t]he court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *K-Tel Int'l Sec. Litig. v. K-Tel Int'l (in Re K-Tel Int'l Sec. Litig.)*, 300 F.3d 881, 889 (8th Cir. 2002) (internal quotation omitted).

4

## DISCUSSION

### I.   **Breach of Contract**

Berry asserts a breach of contract claim. Time and Hancock argue

that there is no contractual obligation to provide alternative care because a

condition precedent to the contract was not fulfilled and, therefore, there

can be no breach of contract claim. Berry responds that the prevention

doctrine makes the contract enforceable.

Under South Dakota law, "[t]he elements of a breach of contract are

(1) an enforceable promise; (2) a breach of the promise; and, (3) resulting

damages." *Bowes Constr., Inc. v. S.D. DOT*, 793 N.W.2d 36, 43 (S.D. 2010).

In the insurance context:

> Where the provisions of an insurance policy are fairly
> susceptible of different interpretations, the interpretation most
> favorable to the insured should be adopted. This rule of liberal
> construction in favor of the insured and strictly against the
> insurer applies only where the language of the insurance
> contract is ambiguous and susceptible of more than one
> interpretation. . . . This rule does not mean, however, that the
> court may seek out a strained or unusual meaning for the
> benefit of the insured.

*Rumpza v. Donalar Enters.*, 581 N.W.2d 517, 521 (S.D. 1998) (quoting *Olson.*

*v. U.S. Fidelity and Guar. Co.*, 549 N.W.2d 199, 200 (S.D. 1996)).

"It is a general principle of contract law that failure of a condition

precedent . . . bars enforcement of the contract." *Farmers Feed & Seed, Inc.*

*v. Magnum Enterprise, Inc.,* 344 N.W.2d 699, 701 (S.D. 1984) (citing

5 Samuel Williston, *A Treatise on the Law of Contracts* § 663 (1961);

5A Arthur L. Corbin, *Corbin on Contracts* § 1175 (1964)). "A condition

precedent is a contract term distinguishable from a normal contractual

promise in that it does not create a right or duty, but instead is a limitation

on the contractual obligation of the parties." *Johnson v. Coss*, 667 N.W.2d

701, 705-06 (S.D. 2003).

The prevention doctrine is an exception to the general rule of

condition precedent. *Id.* at 706. The South Dakota Supreme Court has

adopted the Restatement (Second) of Contracts § 245 cmt. (a) prevention

doctrine:

> Where a duty of one party is subject to the occurrence of a
> condition, the additional duty of good faith and fair dealing
> imposed on him . . . may require some cooperation on his part,
> either by refraining from the conduct that will prevent or hinder
> the occurrence of that condition or by taking affirmative steps
> to cause its occurrence. . . . Non-performance of that duty when
> performance is due is a breach. . . . It has the further effect of
> excusing the non-occurrence of the condition itself, so that
> performance of the duty that was originally subject to its
> occurrence can become due in spite of its non-occurrence.

*Id.* (quoting Restatement (Second) of Contracts § 245 cmt. (a)). In other

words, "if a party to a contract hinders the occurrence of a condition

precedent, that condition is waived." *Id.* (citing 13 *Williston on Contracts*

§ 39:4 (4th ed. 2000)). The prevention doctrine requires that the conduct

preventing the condition precedent have "contributed materially" to the non-

occurrence of the condition precedent. *Id.* (internal quotation omitted).

6

The prevention doctrine is similar to "'waiver by estoppel' in the context of excuses for nonperformance of contractual duties." *Id.* (quoting 13 *Williston on Contracts* § 39.4). The party who prevents a condition from occurring is estopped from benefitting from the non-occurrence of the condition precedent, which would have removed the contractual obligation. *Id.* "To prove waiver by estoppel one need only show that he or she was misled to his or her prejudice by the conduct of the other party into the honest and reasonable belief that the other party was not insisting upon some right."13 *Williston on Contracts* § 39:29 (4th ed.)

The policy specifies that Berry may receive benefits for alternate care, meaning care provided outside of a nursing facility, in order to facilitate Berry remaining in her home. In order to receive alternate care benefits the policy requires that: (1) Time receive proof that Berry is eligible for nursing facility benefits; (2) Berry would otherwise require care at a nursing facility; and (3) Berry, Time, and Berry's physician mutually agree to the plan. Docket 1-1 at 15. The policy specifies that the alternative care plan "is negotiable." Docket 1-1 at 15.

Berry contends that she provided Time with proof that she is eligible for nursing facility benefits, thereby satisfying the first condition. In addition, Berry asserts that she would otherwise require care at a nursing facility, thereby satisfying the second condition. Viewing the facts in the

light most favorable to the nonmoving party, Berry has pleaded sufficient facts to show that she meets these two conditions. All parties are in agreement that the third condition, a mutual agreement on the alternate care plan, has not been fulfilled.

Berry contends that Time and Hancock would not negotiate with her, and, therefore, blocked mutual agreement, ensuring that the condition precedent to coverage would never be fulfilled. Berry further alleges that Hancock did not provide proper information at initial contact. Docket 1 at ¶¶ 14, 18-19. Hancock then denied coverage for Berry without negotiation. Docket 1 at ¶¶ 24, 26. Berry believes this denial was unreasonable. Docket 1 at ¶ 43. Berry complains that Hancock's actions were a breach of contract and constituted bad faith and therefore trigger the prevention doctrine because the contract requires a good-faith negotiation between the parties.

Berry argues that because Time and Hancock purposefully prevented the condition precedent from occurring, the prevention doctrine waives the condition precedent and makes the policy enforceable. Berry relies on two prevention doctrine cases to buttress her argument: *Johnson v. Coss*, 667 N.W.2d 701 (S.D. 2003) and *Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884 (S.D. 2006).

In *Johnson*, the plaintiff Johnson owned a Ford Motor Company franchise and planned to sell the franchise to defendant Coss. 667 N.W.2d

8

at 703. The contract contained a condition precedent requirement that Ford Motor Company needed to approve the transfer. *Id.* Ford Motor Company identified its requirements to Coss, who was unable to meet those requirements. *Id.* The condition precedent was not fulfilled and the contract failed. *Id.* Johnson claimed that Coss had caused the condition precedent not to occur. *Id.* at 705. Coss claimed that he made sufficient efforts to fulfill the requirements and the failure of the condition precedent barred Johnson from bringing a breach of contract claim. *Id.* The South Dakota Supreme Court reversed the grant of summary judgment to Johnson and remanded because the "alleged facts were sufficient to create genuine issues of dispute as to whether Coss spent sufficient time, energy, and expense to satisfy the condition precedent." *Id.* at 707.

In *Weitzel*, the South Dakota Supreme Court remanded a breach of contract case with instructions to the lower court to rely on *Johnson* when determining whether the prevention doctrine should apply. 714 N.W.2d at 895. As acknowledged by Time and Hancock, "[i]n each case the court ruled that a jury must determine whether the prevention doctrine applied." Docket 20 at 8. Contract interpretation is usually a matter of law, but the prevention doctrine and waiver by estoppel are usually questions of fact. "Whether interference by one party to a contract amounts to prevention . . .

is a question of fact to be decided by the jury." *Johnson*, 667 N.W.2d at 707 (citing 13 *Williston on Contracts* § 39:3).

Berry contends that despite an agreement being necessary to obtain policy coverage, Time and Hancock would not engage in negotiations on an alternate care plan as required by the policy. Berry states that Hancock initially provided inconsistent information, then subsequently imposed licensing restrictions that were not listed in the policy. These facts are sufficient to state a breach of contract claim because Time and Hancock may have acted to prevent the condition from going into effect and thus, the prevention doctrine as recognized in *Johnson* may excuse the condition precedent.

Time and Hancock argue that allowing this claim to move forward means that Berry can file suit anytime an agreement is not reached. Berry pleads that Hancock intentionally engaged in these actions to prevent the condition precedent from being fulfilled. Berry's contentions are sufficient to move the prevention doctrine claims beyond the pleading stage.

Time and Hancock rely on *Roland v. Transamerica Life Insurance. Co.*, 570 F. Supp. 2d 871 (N.D. Tex. 2008), *aff'd*, 337 Fed. Appx. 389 (5th Cir. 2009) and *Mansur v. PFL Life Insurance. Co.*, 589 F.3d 1315 (10th Cir. 2009) in support of their motion to dismiss the breach of contract claim. Neither case is controlling and neither case discusses the application of South

Dakota law. Both cases were summary judgment motions, not motions to dismiss. And neither case involved the issue at dispute here, which is the insurance company's requirement of licensed home healthcare providers. Because Berry has pleaded sufficient facts to state a claim for relief that is plausible on its face, her breach of contract claim survives the motion to dismiss.

## II.   Bad Faith

Berry contends that Hancock acted in bad faith in denying her policy coverage under the implied covenant of good faith and fair dealing. Under South Dakota law, all contracts have an "implied covenant of good faith and fair dealing which prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract." *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990); *Trouten v. Heritage Mut. Ins. Co.*, 632 N.W.2d 856, 862 (S.D. 2001) (affirming the rule in *Garrett*).

Berry alleges that Hancock knew there was not, or acted in reckless disregard to having, a reasonable basis for denying the claim. Additionally, Hancock's refusal to honor the policy was "willful, vexatious and without reasonable basis, resulting in substantial damages to Mrs. Berry." Docket 1 at ¶¶ 41-43.

Time and Hancock respond that if the policy does not cover Berry's requested care there can be no bad faith claim. Docket 20 at 7. Time and Hancock do not contend that the bad faith claim cannot go forward if the breach of contract claim is allowed to go forward. Because the motion to dismiss is denied on the breach of contract claim, there is no basis to dismiss the bad faith claim.

Moreover, Berry has pleaded sufficient facts to sustain a bad faith claim at this stage. Berry contends that Hancock was disingenuous in the first phone conversation between Lisa Paulson and Hancock. Hancock was then unwilling to negotiate an alternative care plan once Dr. Berry pushed for coverage after Berry had privately arranged for home healthcare services. Berry has pleaded sufficient facts to state a plausible claim that Hancock acted in bad faith, and the motion to dismiss is denied.

## III.   **Punitive Damages**

Hancock moves to dismiss Berry's punitive damages claim and argues that the punitive damages claim is pleaded incorrectly as a separate count and that there is no underlying cause of action. South Dakota law allows plaintiffs, in certain circumstances, to recover punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991). Under SDCL 21-3-2, a plaintiff claiming punitive damages must show that "the defendant has been guilty of oppression, fraud, or malice, actual or presumed." If the plaintiff makes

12

this showing, "the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." SDCL 21-3-2; *see also Gross v. Kouf*, 349 N.W.2d 652, 654 (S.D. 1984) ("[T]he purpose of awarding punitive damages is to punish the wrongdoer . . . [T]his [punitive] award should serve as a warning to others").

Berry seeks punitive damages from Hancock on her bad faith claim. Punitive damages are not an independent cause of action under South Dakota law, but can be awarded in addition to compensatory damages. *Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921, 928 (S.D. 1994). While punitive damages are normally not available for a breach of contract, "[a]n insured c[an] seek punitive damages from her insurer when prosecuting a bad faith action." *Biegler v. Am. Family Mut. Ins. Co.*, 621 N.W.2d 592, 604 (S.D. 2001).

Berry alleges in her complaint that Hancock's conduct was "willful, unreasonable, or done in conscious or reckless disregard of the rights" of Berry. Docket 1 at ¶ 45. Berry pleads that Hancock did not provide correct information to her and then placed unreasonable limitations on home healthcare providers. She claims that Hancock acted unreasonably and refused to negotiate home healthcare for Berry. These facts, if proven, are sufficient to support an award of punitive damages.

13

Berry pleads punitive damages separately in her complaint as Count 3 and seeks punitive damages in her prayer for relief. Time and Hancock are correct that punitive damages must be based on an underlying claim and cannot stand alone. Because Berry has sufficiently pleaded her bad faith claim, however, the punitive damages prayer for relief will not be dismissed for lack of an underlying claim. The prayer for relief seeking punitive damages survives the motion to dismiss.

## IV.   Attorney's Fees

Berry seeks attorney's fees pursuant to SDCL 58-12-3. Time and Hancock move to dismiss the claim because there is no valid underlying cause of action and the prayer for attorney's fees should not have been stated as a separate claim.

Under South Dakota law, in actions against an insurance company where that company has refused "to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the [court] shall . . . allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs." SDCL 58-12-3. Berry has prayed for attorney's fees both as a separate claim and in her prayer for relief. Berry has sufficiently pleaded the refusal to pay in this case as "vexatious or without reasonable cause," so the prayer for relief for attorney's fees survives the motion to dismiss.

14

## CONCLUSION

The preceding factual allegations, if true, along with the inferences drawn in favor of Berry as the nonmoving party, sufficiently state claims for relief that are plausible on their face with regard to both the breach of contract claim and the bad faith claim and, therefore, can sustain awards of punitive damages and attorney's fees. Thus, Time and Hancock's motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is denied. Accordingly, it is

ORDERED that defendants' motion to dismiss (Docket 15) is denied.

Dated June 28, 2011.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE